**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**PIKEVILLE DIVISION**

| | |
|---|---|
| **GRIZZLY PROCESSING, LLC,** ) | |
| **PLAINTIFF,** ) | |
| ) | |
| **v.** ) | |
| ) | **CASE NO 7:08-CV-00226-KKC** |
| ) | |
| **WAUSAU UNDERWRITERS** ) | **Electronically Filed** |
| **INSURANCE COMPANY,** ) | |
| **DEFENDANT.** ) | |
| _____) | |

## MEMORANDUM IN SUPPORT OF WAUSAU UNDERWRITERS INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT ON THE POLLUTION EXCLUSION

Pursuant to Federal Rule of Civil Procedure 56, Defendant, Wausau Underwriters Insurance Company ("Wausau"), respectfully submits this Memorandum of Law in support of its Motion for Summary Judgment on the Pollution Exclusion.

### I.      INTRODUCTION

This case can and should be resolved as a matter of law based on the unambiguous language of the pollution exclusions contained in the insurance policies at issue and the allegations set forth in the underlying lawsuit against Grizzly Processing LLC ("Grizzly") regarding alleged property damage and bodily injury arising from coal dust and other pollutants emitted during Grizzly's coal mining and processing operations.  Each of the insurance policies at issue contains an exclusion that bars insurance coverage for claims that arise out of the release of pollutants.  Courts applying both Kentucky and West Virginia law have found that similar pollution exclusions are unambiguous and exclude coverage for claims similar to those asserted in the underlying lawsuit against Grizzly.  Because the underlying complaint states a claim that falls within the terms of the pollution exclusions, there is no possibility of coverage under the

Wausau policies.  Accordingly, Wausau cannot, as a matter of law, have a duty to defend or indemnify Grizzly with respect to the underlying lawsuit.  Wausau is therefore entitled to summary judgment dismissing Grizzly's complaint for coverage in its entirety.

## II.    STATEMENT OF UNDISPUTED FACTS

### A.    The Underlying Lawsuit

On January 16, 2008, Grizzly submitted a "General Liability Notice of Occurrence/ Claim" to Wausau.  The notice attached a Complaint and Second Amended Complaint from a civil suit that had been filed in the Floyd Circuit Court, Floyd County, Kentucky, styled *Bonnie Crisp, et al., v. Grizzly Processing, LLC and Frasure Creek Mining, LLC*, Civil Action No. 07-CI-1384. ("Civil Suit").  Copies of the Complaint and Second Amended Complaint are attached as Exhibits A and B, respectively, to the Affidavit of Kimberly Olson ("Olson Affidavit"), submitted herewith as Exhibit 1.

In their Second Amended Complaint, the underlying plaintiffs allege that Grizzly is "involved in the coal mining business," and has "operat[ed] a coal processing plant near [the plaintiffs'] residence for the past two or three years (2005-2007), and increased in intensity in 2007." See Exhibit B, *Second Amended Complaint*, ¶¶ 5 and 6.  The underlying plaintiffs allege that Grizzly's "coal-mining activities have caused their residences to be contaminated with **coal dust and other pollutants**." *Id., at* ¶7. (emphasis added).  The plaintiffs also allege that Grizzly's "coal-mining vehicles caused a continuous and unreasonable pollutants." (sic)  *Id.* at ¶8.  In addition, the plaintiffs allege that "the continuous dust, noise and contamination has substantially interfered with their ability to enjoy and use their residence thus constituting a trespass and nuisance" and "caus[ing] a diminution in value of their home . . . [and] loss of use of their homes." *Id.* at ¶¶ 9 and 10.

Furthermore, the Second Amended Complaint alleges that Grizzly's "coal-mining activities have . . . violated . . . the laws of the Commonwealth of Kentucky." *Id.* at ¶10. The plaintiffs allege that "on October 1, 2007, [Grizzly was] found to be in violation of the relevant environmental laws" of the Commonwealth of Kentucky. *Id.*, at ¶10. The Second Amended Complaint concludes with the allegation that many of the plaintiffs have "complained . . . about the environmental damage being done to their residences", to no avail. *Id.* at ¶11.

**B.     Grizzly's Coverage Claim and Wausau's Response**

Grizzly submitted its "General Liability Notice of Occurrence/Claim" under a Commercial General Liability ("CGL") policy issued to Janmar LLC that was effective during the period December 14, 2006 to December 14, 2007. Grizzly was added as an "Additional Named Insured" on that CGL policy under an "Additional Named Insured Endorsement" that was effective as of February 15, 2007. A copy of the CGL policy in effect during the period December 14, 2006 to December 14, 2007 (the "2006-2007 CGL Policy") is attached to the Olson Affidavit as Exhibit D. Pursuant to its notice of claim, Grizzly requested defense and indemnity from Wausau under the 2006-2007 CGL Policy for the matters alleged in the underlying Civil Suit.

By letter dated February 20, 2008, Wausau informed Grizzly that there was no coverage for the underlying Civil Suit based on the pollution exclusions and other terms, conditions, and exclusions in the Wausau policies issued to Janmar LLC on which Grizzly had been listed as an Additional Named Insured. A copy of Wausau's February 20, 2008 coverage position letter is attached to the Olson Affidavit as Exhibit G. In addition to the 2006-2007 CGL Policy, the Wausau coverage position letter dealt with a CGL policy effective during the period December 14, 2007 to December 14, 2008 (the "2007-2008 CGL Policy"), and an umbrella excess liability ("UEL") policy effective during the period December 14, 2006 to December 14, 2007 (the

"2006-2007 UEL Policy").   Copies of these policies are attached to the Olson Affidavit as Exhibits C, and F, respectively.[1]

Subsequent to Wausau's issuance of its coverage position letter, the Second Amended Complaint in the Civil Suit has been amended to add plaintiffs, as well as additional allegations (which were inserted in the Third Amended Complaint and have been reiterated verbatim in each subsequent Amended Complaint).   A copy of the most recently-filed complaint, the Sixth Amended Complaint, is attached to the Olson Affidavit as Exhibit H.   In their Sixth Amended Complaint, the underlying plaintiffs allege that Grizzly is "currently operating a series of coal mining facilities, including a **coal processing plant** and **coal tipple**, near [the plaintiffs'] residences." Exhibit H, *Sixth Amended Complaint*, ¶53 (emphasis added)..   The underlying plaintiffs allege that "**coal mining activities** have caused their residences(s) to be **contaminated** with **coal dust and other pollutants.**" *Id.* at ¶54 (emphasis added).  In addition, the underlying plaintiffs allege that "the continuous coal dust and noise emitted from [Grizzly's] coal mining and processing operations, including the running of their coal trucks, have cause[d] a substantive and unreasonable interference and violation of the rights of the Plaintiffs to enjoy, use, and utilize their houses and property." *Id.* at ¶55 (emphasis added).  The plaintiffs further allege that "the actions of [Grizzly] constitute a nuisance and a trespass against the rights of the Plaintiffs . . . [and that Grizzly is] strictly liable for [its] conduct in that [it is] engaging in ultra hazardous and dangerous coal mining activities."  In addition to the alleged property damage, the plaintiffs now allege that many of them "have health problems, including breathing problems, all of which have

---

[1] Subsequent to issuance of the coverage position letter, Wausau obtained a copy of a UEL policy issued to Janmar LLC effective during the period December 14, 2007 to December 14, 2008, on which Grizzly was listed as an Additional Named Insured (the "2007-2008 UEL Policy").  A copy of the 2007-2008 UEL Policy is attached to the Olson Affidavit as Exhibit E.

been exacerbated by [Grizzly's] activities, and they have experienced pain and suffering, and medical expenses." *Id.* at ¶57.

Finally, the Sixth Amended Complaint repeats the allegations in the Second Amended Complaint that Grizzly's "coal mining activities have not only violated [the plaintiffs'] rights, but the laws of the Commonwealth of Kentucky." The plaintiffs allege that "on October 1, 2007, the Defendants were found to be in violation of the relevant environmental laws, and the Plaintiffs allege that such violations are indicative of the reckless disregard the Defendants have shown for the Plaintiffs' rights." *Id.* at ¶59. The Sixth Amended Complaint closes with the allegation that "[m]any of the Plaintiffs have complained to [Grizzly] . . . about the **environmental damage** being done to their residence, and such complaints have been met with deliberate indifference." *Id.* at ¶60 (emphasis added).

## C.    The Wausau Policies

As set forth above, Grizzly seeks coverage under policies issued by Wausau to Janmar LLC. As of February 15, 2007, Grizzly was added as an Additional Named Insured on the 2006-2007 CGL Policy. Grizzly was also an Additional Named Insured on the 2007-2008 CGL Policy. Similarly, as of February 15, 2007, Grizzly was added as an Additional Named Insured under the 2006-2007 UEL Policy, and was also an Additional Named Insured on the 2007-2008 UEL Policy.

The CGL policies provide that Wausau "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." *See* CGL Policies, Exhibits C and D, at Section I – Coverages, Coverage A, paragraph 1 a ("Insuring Agreement"). In addition, the CGL policies state that Wausau "will have the right and duty to defend the insured against any 'suit' seeking those damages.

However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." *Id.*

The CGL policies also contain exclusions from coverage, including an exclusion relating to damages arising from releases of pollutants. The 2006-2007 CGL Policy contains a "Total Pollution Exclusion Endorsement," while the 2007-2008 CGL Policy contains an "absolute pollution exclusion" in the CGL Coverage Form of the Policy. In addition, the UEL Policies contain a "total pollution exclusion" in the Commercial Liability Policy form in those Policies. These pollution exclusions, in pertinent part, are set forth below.

The Absolute Pollution Exclusion ("APE") contained in the 2007-2008 CGL Policy, located in Section 2, "Exclusions", provides, in relevant part:

This insurance does not apply to:

**f. Pollution**

(1) "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured …

\* \* \*

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible;
. . .

\* \* \*

The 2007-2008 CGL Policy defines pollutants as follows:

- 6 -

15. **"Pollutants"** means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.   Waste includes materials to be disposed of, recycled, reconditioned or reclaimed.

See Exhibit C, 2007-2008 CGL Policy, Section I, Coverage A, Exclusions, at paragraph 2 (f).

The Total Pollution Exclusion Endorsement contained in the 2006-2007 CGL Policy provides, in

pertinent part:

### Total Pollution Exclusion Endorsement

This endorsement modifies insurance provided under the following:

### COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion f. Pollution, of SECTION I – COVERAGE is deleted and replaced by the following:

This insurance does not apply to:

**f.**    **(1)**    The "contamination" of any "environment" by "pollutants" that are introduced at anytime, anywhere, in any way.

**(2)**    Any "bodily injury," "personal and advertising injury" or "property damage" arising out of such "contamination."

\* \* \*

Definition 15. of SECTION V – DEFINITIONS is deleted and replaced by the following:

**15.**    "Pollutant" means any irritant, including noise or sound, or any solid, liquid, gaseous or thermal "contaminant," including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.

As used in this endorsement, the following terms have the following meanings:

"Contamination" means any unclean or unsafe damaging or injurious or unhealthful condition arising out of the presence of "pollutants," whether permanent or transient in any "environment."

"Environment" includes any person, any man-made object or feature, animals, crops and vegetation, land, bodies of water, underground water or water table supplies, air and any other feature of the earth or its atmosphere, whether or not altered, developed or cultivated, including, but not limited to any of the above, owned, controlled or occupied by the insured.

See  Exhibit D, 2006-2007 CGL Policy, Total Pollution Exclusion Endorsement, Form GL 2147.

Finally, the "total pollution exclusion" contained in the UEL Policies provides, in relevant part:

**SECTION  VI – EXCLUSIONS**

**A.  The following exclusion applies only to Coverage A of this insurance:**

This insurance does not apply to:

**1.      Pollution**

      a.       "Bodily injury', 'property damage', or 'personal or advertising injury' which would not have occurred in whole or in part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release, escape or presence of 'pollutants' at any time and whether occurring indoors or outdoors; . . .

\* \* \* \*

The UEL Policies contain the following definition of "pollutants":

    T.  "Pollutants" under Coverages A and B means any solid, liquid, gaseous, sound or thermal irritant or contaminant, including, but not limited to smoke, vapor, soot, fumes, acids, odors, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

See Exhibits E and F, Commercial Liability Policy form, Section VI-Exclusions, paragraph A.

1.a., at page 10, and  Section VII-Definitions, paragraph T, at page 23.

**D.      The Coverage Lawsuit**

On November 3, 2008, Grizzly filed the present Complaint for Declaratory Judgment, which alleges that Grizzly is entitled to coverage under the Wausau Policies. *See Grizzly's Complaint*, at ¶14.   Additionally, Grizzly alleges that a controversy exists regarding the applicability of the Wausau Policies to each of the plaintiffs' claims in the Civil Suit.   On December 19, 2008, Wausau filed its Answer to the Complaint, admitting that it denied Grizzly's request for coverage under the Wausau Policies. *See Answer of Wausau*, at ¶7.   Moreover, Wausau asserted a Counterclaim against Grizzly seeking a declaration that Grizzly's claims under the Wausau Policies are barred because, *inter alia*, the policies exclude coverage for claims arising out of the discharge, release, or dispersal of pollutants.

### III.   <u>ARGUMENT</u>

**A.   WAUSAU IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE POLLUTION EXCLUSIONS BAR COVERAGE FOR THE CIVIL SUIT, AS A MATTER OF LAW.**

**1. Summary Judgment Standard.**

Summary judgment must be granted when there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Jahn v. Equine Services, PSC*, 233 F.3d 382, 387 (6th Cir. 2000). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Pollock v. Pollock*, 154 F.3d 601, 611 (6th Cir. 1998).

Once the burden of production has shifted from the movant, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574*, 586 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Liberty Lobby Inc.* 477 U.S. , at 242. A court "may grant summary judgment if the record, taken as a whole, could not lead a rational trier of fact to find for [the non-moving] party." *McKinnie v. Roadway Express, Inc.*, 341 F.3d 554, 557 (6th Cir. 2003)(citing *Matsushita*, 475 U.S. at 587); *Hamilton v. Combs*, 2008 U.S. Dist. LEXIS 105016 * 9 (E.D. Ky. Dec. 30, 2008).

In the instant case, the underlying complaint in the Civil Suit alleges property damage and bodily injury arising from the discharge of pollutants during the course of Grizzly's coal-mining operations. These allegations place the underlying plaintiffs' claims squarely within the language of the pollution exclusions contained within the Wausau policies. Since there can be no genuine issue of material fact concerning the allegations contained in the underlying

complaint and the application of the pollution exclusions to those allegations as a matter of law, there is no genuine issue for trial.   Summary judgment should therefore be entered in favor of Wausau.

2.  **The Underlying Complaint Allegations And Pollution Exclusions In The Policies Demonstrate That There Is No Coverage For The Civil Suit, As A Matter Of Law.**

In determining whether coverage is available for the claims made in a lawsuit against a policyholder, the court must compare the plaintiffs' allegations in the underlying complaint against the insuring provisions and exclusions contained in the subject insurance policies.[2]  *See James Graham Brown Foundation, Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991)("The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage regardless of the merit of the action.").  *See also Aluise v. Nationwide Mutual Fire Ins. Co.*, 218 W. Va. 498, 507, 625 S.E.2d 260, 269 (2005)("'[A]s a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiffs' complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy.'" (quoting *Aetna Cas. & Sur. Co. v. Pitrolo* , 176 W. Va. 190, 194, 342 S.E.2d 156, 160 (1986)).  If the allegations in the underlying complaint state a claim that falls within the terms of an exclusion in the policy, the insurer has no duty to defend the underlying lawsuit.  *See, e.g., Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 580 (6th Cir. 2001)(no duty to defend where "the language of the complaint reveals that any potential coverage was abrogated by two explicit coverage exclusions."); *Associated Industries*

---

[2] On March 9, 2009, Grizzly filed a Motion for Choice of Law arguing that West Virginia law should apply to this case.  Wausau will file a response in opposition to Grizzly's motion, in which it will explain that because Kentucky and West Virginia law with respect to the pollution exclusions at issue in this case is not in conflict, the law of the forum should be applied.  *See Cincinnati Insurance Co. v. Crossman Communities Partnership*, 2008 U.S. Dist. LEXIS 25188 *8, n.3 (E.D.Ky 2008)("To the extent that there is no actual conflict between Kentucky and [West Virginia] law, a 'false conflict' is presented .. .. In most cases, the law of the forum jurisdiction will govern in that situation", unless "only one jurisdiction has a legitimate interest in the application of its rule of decision.").  For purposes of this Motion for Summary Judgment, Wausau will discuss both Kentucky and West Virginia cases.

*of Kentucky, Inc. v. United States Liability Insurance Group* , 2007 U.S. Dist. LEXIS 33614 **
20 – 22 (W.D. Ky. May 7, 2007), *aff'd* , 531 F.3d 462 (6th Cir. 2008)(no duty to defend where
complaint allegations stated claim falling within "clear and unequivocal language" of exclusion);
*Kentucky Association of Counties,* 157 S.W.2d at 635 (no duty to defend where "a comparison of
the complaint in the underlying action and the [policy] . . . [showed that] "[t]he claims were
clearly and expressly excluded."). *Cf. Bowyer v. Hi-Lad, Inc.*, 216 W.Va. 634, 651 (2004)(if
"causes of action alleged in the plaintiff's complaint are entirely foreign to the risks covered by
the insurance policy, then the insurance company is relieved of its duties under the policy.").

        Moreover, because the duty to defend is broader than the duty to indemnify, if the insurer
has no duty to defend, it has no duty to indemnify.  *See, e.g. National Union Fire Ins. Company
of Pittsburgh, PA v. United Catalysts, Inc* , 182 F. Supp. 2d 608, 610 (W.D. Ky. 2002)(if insurer
"does not have a duty to defend the underlying action, neither does it have a duty to
indemnify.").   Accordingly, when the underlying complaint allegations state a claim that falls
within an exclusion, there is no coverage for the underlying lawsuit under the policies, as a
matter of law.

        The question of whether the complaint allegations state a claim under the policy entails
contract interpretation, which "is a matter of law for the Court to decide." *Travelers Property
Casualty Company of America v. B&W Resources, Inc.,* 2006 U.S. Dist. LEXIS 78311 *6 (E.D.
Ky. Oct. 26, 2006), *aff'd,* 259 Fed. Appx. 779, 2008 U.S. App.  LEXIS 921 (6th Cir.
2008)(*citing Kemper National Insurance Companies v. Heaven Hill Distilleries, Inc.,* 82 S.W.2d
869, 870 (Ky. Sup. Ct., 2002)).   In doing so, "[t]he Court must first look to the language of the
insurance policy." *Id.* (citing *Kemper,* 82 S.W.2d at 870).   Absent ambiguity, terms in an
insurance contract are to be construed according to their "plain and ordinary meaning."
*Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 249 S.W.3d 174, 185 (Ky.App.,

2006).  *See also Kentucky Association of Counties, All Lines Trust Fund v. McClendon,* 157 S.W.2d 626, 630 (Ky. 2005)("When the terms of an insurance contract are unambiguous and not unreasonable, they will be enforced."); *Nationwide Mutual Insurance Co. v. Nolan,* 10 S.W.3d 129, 131-132 (Ky.1999).

This principle of contract interpretation applies to the exclusions, such as the pollution exclusions at issue here, as well as to the coverage grants, in an insurance policy.  *See McClendon,* 157 S.W.2d at 630, n.10 (citing *American National Bank and Trust Company v. Hartford Accident and Indemnity Company,* 442 F.2d 995, 999 (6th Cir. 1971)("Under Kentucky law unambiguous and clearly drafted exclusions which are 'not unreasonable' are enforceable.")).  While "an exclusion clause should be construed narrowly, it still must be interpreted according to the plain meaning of the language used in the provision.*"  Burlington Ins. Co. v. Progressive Northern Ins. Co.,* 2008 U. S. Dist. LEXIS 100264 *13 (E.D. Ky. Dec. 11, 2008)*(citing West Amer. Ins. Co. v. Embry,* No. 04-CV-47, 2005 U.S. Dist. LEXIS 9387, 2005 WL 1026185, at *3 (W.D. Ky. April 25, 2005)("[T]hough Kentucky courts do strictly construe exclusionary provisions against the insurer, they would not do so in a way to 'overcome plain, clear language resulting in a strained or forced construction.'").

As set forth below, the pollution exclusions in the Wausau Policies are clear and unambiguous, and should be enforced in accordance with their terms.  They preclude coverage for damages and injuries arising from the discharge, dispersal, or release of pollutants, such as the property damage and bodily injury that the underlying plaintiffs allege has been caused by "continuous coal dust and noise emissions" and "contaminat[ion] with coal dust and other pollutants" resulting from Grizzly's coal mining activities.  *See* Sixth Amended Complaint, ¶¶ 54 and 55.  In addition, the pollution exclusions define "pollutant" unambiguously as including the "coal dust and other pollutants" that are alleged in the underlying complaint to have caused the

plaintiffs' damages and injuries.  This Court should therefore apply the pollution exclusions in accordance with their straightforward provisions, and find that they preclude coverage for the claims alleged in the Civil Suit.[3]

### 3.  The Unambiguous Pollution Exclusions in the Wausau Policies Clearly Bar Coverage.

Courts in Kentucky and West Virginia have examined the language contained in "total" and "absolute" pollution exclusions such as those contained in the Wausau Policies and have concluded that the language in the exclusions is unambiguous.  The exclusions in the Wausau Policies should therefore be applied to bar coverage for the property damage and bodily injury alleged in the Civil Suit.

### a.  Kentucky courts have found the exclusions at issue to be unambiguous.

In *Bituminous Casualty Corp. v. RPS Company,*  915 F.Supp. 882 (W.D. Ky. 1996), the federal district court analyzed a total pollution exclusion in a CGL policy issued by Bituminous Casualty Corporation ("Bituminous").  On January 28, 1994, an employee of RPS Company ("RPS") was servicing the ammonia refrigeration system at a meat packing plant when he allowed ammonia to escape from the plant.  RPS demanded that Bituminous pay the claims asserted against RPS by the packing plant for damages it suffered during this incident. *Bituminous*, 915 F. Supp. at 883.  The court stated that,  "[w]e examined the terms of the exclusion and the policy and found no ambiguity.  The policy exclusion is what it purports to be, an exclusion for liability based upon, *inter alia,* the release of pollutants." *Id.* at 884.  Accordingly, the court granted summary judgment in favor of Bituminous. *Id.*

---

[3] As set forth in the Affirmative Defenses contained in Wausau's Answer, there are other grounds upon which Wausau has denied coverage for the Civil Suit under the Wausau Policies.  By seeking an award of summary judgment based on the pollution exclusions contained in the Wausau Policies, Wausau does not waive these additional defenses to coverage.

In *Sunny Ridge Enterprises, Inc. v. Fireman's Fund Ins. Co., Inc.*, 132 F.Supp.2d 525 (E.D.Ky. 2001), the federal district court granted the insurer's summary judgment motion finding that the insured's umbrella policy contained a pollution exclusion that excluded coverage for property contamination.  The dispute in *Sunny Ridge* arose from Sunny Ridge's sale to a third party of scrap metal that contained a radionuclide piece, which contaminated the third party's property. *Sunny Ridge*, at 132 F. Supp. at 526.  Sunny Ridge sought coverage under an umbrella policy issued by Fireman's Fund. *Id.*

Fireman's Fund argued that its umbrella policy contained a clearly defined exclusion for any liability arising out of pollution. *Sunny Ridge*, at 526.  The exclusion stated that it barred coverage for liability arising "out of the actual, alleged or threatened existence, discharge, dispersal, seepage, migration, release or escape of pollutants." *Id.*  The exclusion also stated that "it is the intent and effect of this exclusion to exclude any or all coverages afforded by this policy for any claim ... arising out of the existence ... or escape of pollutants . . . it applies wherever or however such occurs." *Id.*

The court rejected the policyholder's argument that the existence of a nuclear energy exclusion in the same policy created an ambiguity with respect to the pollution exclusion. Because Sunny Ridge did not own a nuclear facility, the court found that the nuclear exclusion did not apply to Sunny Ridge.  Accordingly, the court held that "the pollution exemption's broad language is not rendered ambiguous within the context of the complete policy."  *Id.* at 528.  The court concluded that 'the policy contains no ambiguity, and its plain provisions must be applied" to bar coverage for the release of pollutants.  *Id.* at 526-527.  The court therefore granted Fireman's Fund's motion for summary judgment. *Id.* at 527-28.

Kentucky state courts have also expressly held that the language contained in pollution exclusion clauses similar to those now before the Court is unambiguous on its face.  In *Motorists*

- 14 -

*Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679 (Ky. App. 1996), the court analyzed an absolute pollution exclusion and found that there were no inherent ambiguities in the language of the pollution exclusion. *Motorists Mutual*, 926 S.W.2d at 680.  More recently, the Court of Appeals held that the language of a total pollution exclusion before the court was unambiguous. *See State Auto Ins. Co. v. Greenrose*, 2005 Ky. App. LEXIS 266 (Ky. App. 2005).

In both cases, the Court of Appeals went on to find that an ambiguity arose because of the application of the unambiguous language of the pollution exclusion to the indoor release of pollutants that were at issue in those cases, neither of which is analogous to the large-scale, widespread dissemination of pollutants at issue in the Civil Suit.[4]  Indeed, the Court of Appeals stated in *RSJ* that cases dealing with "environmental pollution" were "distinguishable" from the cases on which it based its conclusion that the absolute pollution exclusion was ambiguous "as applied". *See RSJ*, 926 S.W.2d at 681 (citing *Constitution State Ins. Co. v. Iso-Tex, Inc.*, 61 F.3d 405 (5th Cir. 1995); *Northbrook Indemnity Ins. Co. v. Water District Management Co.*, 892 F.Supp. 170 (1995)).    In *Iso-Tex*, the Fifth Circuit found that an absolute pollution exclusion was unambiguous, and precluded coverage for bodily injury and wrongful death claims arising from Iso-Tex's "alleged deposit of 'enormous quantities of hazardous radioactive materials . . . in close proximity to the plaintiff's [sic] residences without the knowledge or warning to plaintiffs.'"  *Iso-Tex*, 61 F.3d at 406.    The Fifth Circuit noted that Iso-Tex's "radioactive waste was clearly a contaminant and Iso-Tex cannot deny that it is an 'industrial polluter.'"  *Id.* at 409.  The Fifth Circuit accordingly held that the insurer "owes no coverage or indemnity for the claims for bodily injury arising out of contamination by nuclear waste."  *Id.* at 409-410 (citing *National*

---

[4] In *RSJ*, the policyholder was a dry-cleaning company that allegedly released carbon monoxide through a leak in a vent pipe from its boiler into an attic space that was shared by tenants in a shopping center. *See RSJ*, 926 S.W.2d at 679-680.  In *Greenrose*, the policyholder's tenant broke a pipe, causing diesel heating oil to spill into the basement of a residence. *See Greenrose*, 2005 Ky. Ap. LEXIS at *1.

*Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517 (Tx. 1995)("The language in [the absolute] pollution exclusion is clear and susceptible of only one possible interpretation in this case", in which a large cloud of hydrofluoric acid was released from an industrial plant.)).

Similarly, in *Water District Management*, the court found that an absolute pollution exclusion was unambiguous, and precluded coverage for claims by the Water District's former customers in several residential subdivisions that they had been injured by contaminated water distributed by the Water District. *See Water District Management*, 892 F. Supp. at 171. The court found that because the absolute pollution exclusion in the policy was unambiguous, "it is the duty of the court to enforce the policy in accordance with its plain meaning." *Id.* at 174. The court concluded that "[a]s a matter of law the unambiguous terms of the absolute pollution exclusion clause in the Northbrook insurance policies exclude coverage of the Water District for the exact kinds of risks that are the essence of the [underlying] lawsuits." *Id.*

The Kentucky Court of Appeals' citation of the *Iso-Tex* and *Water District Management* cases as "distinguishable" from *RSJ* and *Greenrose* because they involve "environmental pollution" demonstrates that the Kentucky courts would find that the pollution exclusions in the Wausau Policies are unambiguous, both on their face and as-applied to the large-scale industrial pollution at issue in the Civil Suit. This Court should therefore find that under Kentucky law, the pollution exclusions in the Wausau Policies are unambiguous, and preclude coverage for the property damage and bodily injury alleged by the plaintiffs in the Civil Suit.

### b. An Absolute Pollution Exclusion Has Been Found Unambiguous Under West Virginia Law.

A pollution exclusion analogous to those contained in the Wausau Policies has been construed as unambiguous under West Virginia law. *See Supertane Gas Corp. v. Aetna Casualty and Surety Co.*, 1994 U.S. Dist. LEXIS 21602 at 10 (N.D.W.Va. 1994)(a copy of the *Supertane* opinion is attached to this Memorandum as Exhibit 1). In *Supertane*, the policyholder sought

coverage for the costs of cleaning up coal tar generated by its coal gas fuel generation plant. The policy at issue in *Supertane* included a provision entitled "Absolute Pollution Exclusion" which stated, *inter alia*, that "the policy shall not apply to bodily injury, property damage, [or] personal injury arising out of the actual, alleged or threatened discharge, dispersal, release or escape of pollutants." *Id.* at *5. The court found that the exclusion was "conspicuous, plain, clear, and obvious as it relates to the rest of the policy." Moreover, the court stated that although it "did not find a West Virginia case on the absolute pollution exclusion, the Court is persuaded that West Virginia would find such an exclusion, as presented here, to be unambiguous." *Id.*, at * 10.[5]

The *Supertane* court noted that the West Virginia Supreme Court had found that the "sudden and accidental" pollution exclusion was ambiguous in *Joy Technologies, Inc. v. Liberty Mutual Insurance Company* , 187 W.Va. 742, 421 S.E.2d 493 (1992). The *Supertane* court distinguished the *Joy Technologies* ruling, however, on the grounds that it involved a different type of pollution exclusion from the absolute pollution exclusion at issue in *Supertane* (and in the instant case):

> The Court is aware that the West Virginia Supreme Court found an earlier version of such an exclusion ambiguous in *Joy Technologies, Inc. v. Liberty Mutual Insurance Company*, 187 W. Va. 742, 421 S.E.2d 493 (1992). That case turned, however, on the definition of the word 'occurrence' and on Liberty Mutual's representations to the West Virginia Insurance Commissioner when seeking approval to include the exclusionary language in its state policies.
>
> There is no evidence here that [the insurer] ever represented that its absolute pollution exclusion meant something else. Although

---

[5] Fifteen years after issuance of the *Supertane* decision, the West Virginia state courts still have not issued a published decision construing the language and application of the absolute or total pollution exclusions. In *Ayersman v. West Virginia Division of Environmental Protection*, 208 W. Va. 544, 542 S.E.2d 58 (2000), the Supreme Court of Appeals of West Virginia overturned a grant of summary judgment finding that the version of the absolute pollution exclusion contained in an insurance policy held by the West Virginia Division of Environmental Protection ("DEP"), caused the DEP to be uninsured for purposes of a sovereign immunity statute. The Supreme Court did not construe the pollution exclusion in the DEP's policy, but instead remanded the case to the trial court, because its decision did not contain sufficient findings or fact or conclusions of law regarding the applicability of the pollution exclusion to the damages at issue. *Ayersman*, 208 W. Va. at 547.

> Supertane tries to assert an expectation of coverage in this case,
> given the prominence of the exclusion and its clarity, such an
> expectation would not be reasonable.

*Supertane*, 1994 U.S. Dist. LEXIS 21602 at *11.   The *Supertane* court concluded that "this

insurance policy is neither ambiguous nor a contract of adhesion.   Therefore, any consideration

of the 'drafting history of the contract' or other extrinsic evidence of the intent of the parties is

irrelevant and improper."   *Id.* at 12.   Accordingly, the court granted summary judgment to the

insurer, based on the "clear and unambiguous pollution exclusion written into the insurance

contract."   *Id.* at **13-14.

Based on the *Supertane*  analysis, this Court should find that the pollution exclusions

contained in the Wausau Policies are unambiguous under West Virginia law, and preclude

coverage for the property damage and bodily injury alleged in the Civil Suit.

### c.  The Underlying Complaint Allegations Fall Within The Unambiguous Pollution Exclusions In The Wausau Policies.

As set forth above, the types of pollution exclusions contained in the Wausau Policies

have been found unambiguous under Kentucky and West Virginia law, and have been applied to

bar coverage for pollutant releases.   In the instant case, the underlying complaint allegations

plainly state a claim for damages allegedly arising from pollutant releases:  the plaintiffs allege

that their residences have been "contaminated with coal dust and other pollutants", and that "the

continuous coal dust and noise emitted from [Grizzly's] coal mining and processing operations,

including the running of their coal trucks," have caused them to incur property damage and

bodily injury.  *See* Sixth Amended Complaint, ¶¶ 54 and 55.  Because these allegations state a

claim which falls within the unambiguous provisions of the pollution exclusions in the Wausau

Policies, those exclusions bar coverage for the Civil Suit, as a matter of law.  *See, e.g., RPS*

*Company*, 915 F. Supp. at 884; *Supertane*, 1994 U.S. Dist. LEXIS 21602 at ** 13-14.   Wausau

is therefore entitled to summary judgment dismissing Grizzly's complaint.

**4.  The Underlying Complaint Alleges Damages Caused By "Pollutants" As Defined In The Pollution Exclusions.**

The pollution exclusions in the Wausau Policies unambiguously preclude coverage for damages arising out of the dispersal, release or escape of pollutants, such as the emissions of "coal dust and other pollutants" that the plaintiffs identify in the underlying complaint as the cause of their alleged property damage and bodily injury. *See* Sixth Amended Complaint, ¶ 54. The pollution exclusions should therefore be applied to bar coverage for the Civil Suit, as a matter of law.

The Wausau Policies define "pollutant" broadly for purposes of the pollution exclusions contained in the Policies.   In the 2007-2008 CGL Policy, "pollutant" is defined as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste". *See* 2007-2008 CGL Policy, Olson Affidavit Exhibit C, at CGL Coverage Form, Section V, paragraph 15.  Similarly, the UEL Policies define "pollutant" as "any solid, liquid, gaseous, sound or thermal irritant or contaminant, including, but not limited to, smoke, vapor, soot, fumes, acids, odors, alkalis, chemicals, and waste." *See*  UEL Policies, Olson Affidavit Exhibits E and F, at Section VII-Definitions, paragraph T, at page 23. Furthermore, "pollutant" is defined in the 2006-2007 CGL Policy as "any irritant, including noise or sound, or any solid, liquid, gaseous or thermal "contaminant," including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." *See* 2006-2007 CGL Policy, Olson Affidavit Exhibit D, Total Pollution Exclusion Endorsement.  These definitions encompass the emissions of "coal dust and noise" and "coal dust and other pollutants" that are alleged to be at issue in the underlying complaint.

The United States Court of Appeals for the Sixth Circuit has found that coal dust is a "pollutant", as a matter of law.  In a case interpreting the "sudden and accidental" pollution exclusion under Kentucky law, the Sixth Circuit found that discharges of coal dust fell within the

language of the exclusion barring coverage for "injuries or damages arising from the discharge or release of pollutants." *See United States Fidelity and Guaranty Company v. Star Fire Coals, Inc.*, 856 F.2d 31, 33 (6th Cir. 1988)("[i]t is clear that the first half of the pollution exclusion clause calls off any obligations to provide coverage in cases such as this where the damages are caused by the discharge of coal dust.").

In addition, federal regulations classify coal dust as a pollutant or contaminant. *See, e.g., In the matter of Aurora Energy, LLC*, 2005 EPA RJO LEXIS 600 (United States Environmental Protection Agency, 2005) (coal dust is a "pollutant" as defined under Section 502(6) of the Clean Water Act, 33 U.S.C. ¶1362 (6)). *See also* 24 C.F.R. Section 1910.1000 (OSHA Regulations listing personal exposure limits for "Air Contaminants," including "coal dust").

Furthermore, in analogous cases, courts in other jurisdictions have found that silica dust, cement dust, and dust arising from truck deliveries to a composting plant constitute "pollutants" for purposes of absolute and total pollution exclusions. *See, e.g., Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.,* 156 Cal. App. 4th 1469, 1472 (1st App. Dist., 2007)(absolute pollution exclusion bars coverage for dust emissions from trucks servicing composting operation; notes that ""[d]ust has been held to be a pollutant within the meaning of the pollution exclusion in California and elsewhere . . . and dust is recognized and regulated as a form of air pollution under California environmental law"); *Garamendi v. Golden Eagle Ins. Co.,* 127 Cal. App.4[th] 480, 485-486 (1st App. Dist., 2005)(total pollution exclusion bars coverage for widespread dissemination of silica dust as incidental by-product of industrial sandblasting operations; notes that "federal regulations identify silica dust as an air contaminant")(citing 29 C.F.R. 1910.1000 (2004)); *South Dakota State Cement Plant Commission v. Wausau Underwriters Insurance Company*, 2000 SD 116, 616 N.W.2d 397, 406-407 (2000)(absolute pollution exclusion bars coverage for claims of contamination by cement dust emitted from

cement products manufacturing plant; notes that 'cement dust is governmentally regulated", and finds that "assuming that the allegations that [the policyholder] caused contamination are true, no coverage would apply and Wausau would not have a duty to defend because the causes of action in the complaint all clearly fall within the definition of pollution in the pollution exclusion clause.").

In the underlying complaint, the plaintiffs specifically identify "coal dust and other pollutants" as the cause of their alleged property damage and bodily injury. *See* Sixth Amended Complaint, ¶ 54. The underlying plaintiffs also allege that their damages arise from the discharge of materials that constitute "pollutants" within the environmental regulatory scheme under Kentucky law. *See* Sixth Amended Complaint, ¶ 59 (Grizzly's "coal mining activities . . violat[e] . . the laws of the Commonwealth of Kentucky", and "on October 1, 2007, [Grizzly was] "found to be in violation of the relevant environmental laws."). Thus, the underlying complaint plainly states a claim for damages arising from "pollutants" as defined in the Wausau Policies, as a matter of law. The unambiguous pollution exclusions contained in those Policies therefore bar coverage for the Civil Suit, and Wausau is entitled to summary judgment dismissing Grizzly's complaint.

**B.      SUMMARY JUDGMENT IS APPROPRIATE AT THIS TIME.**

The claims asserted in the Civil Suit are clear and unambiguous. The underlying plaintiffs specifically seek damages arising out of the release of "pollutants." *See* Sixth Amended Complaint, ¶¶ 54 – 59. As set forth above, the Wausau Policies preclude coverage for damages that arise out of the release of pollutants. Because the underlying plaintiffs specifically and unambiguously seek damages arising out of the release of "pollutants," and because the Wausau Polices specifically and unambiguously exclude coverage for damages arising out of the release of pollutants, Wausau has no obligation to defend or indemnify Grizzly, as a matter of

law.   Therefore, discovery regarding the allegations in the Civil Suit is neither warranted nor relevant to this Motion for Summary Judgment.   Instead, since there is no genuine issue of material fact, and Wausau has no coverage obligation for the Civil Suit, as a matter of law, summary judgment should be entered dismissing Grizzly's complaint.   *See generally United Catalysts,*   182 F.Supp. 2d at 610 (if insurer "does not have a duty to defend the underlying action, neither does it have a duty to indemnify.").

## IV.   CONCLUSION

Based on the foregoing, Wausau respectfully requests that this court grant summary judgment against Grizzly on all claims asserted against Wausau in this action.

Respectfully submitted,

FROST BROWN TODD LLC


/s Douglas W. Langdon
Charles S. Cassis (Ccassis@fbtlaw.com)
Douglas W. Langdon (Dlangdon@fbtlaw.com)
J. Michael Hearon (Mhearon@fbtlaw.com)
400 West Market Street, 32nd Floor
Louisville, KY  40202-3363
(502) 589-5400 (phone); (502) 581-1087 (fax)
*Counsel for Wausau Underwriters Insurance Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was electronically filed on March 23, 2009, through the ECF system, which will send a notice of electronic filing to the following:

Stephen C. Cawood
C. Bishop Johnson
CAWOOD & JOHNSON, PLLC
108 Kentucky Avenue
P.O. Drawer 128
Pineville, KY  40977
(606) 337-6500 /(606) 337-6100 (fax)
E-mail: sccawood@bellsouth.net
E-mail: cbjohnson@bellsouth.net
*Counsel for Grizzly Processing, LLC*

/s/Douglas W. Langdon
*Counsel for Wausau Underwriters
Insurance Company*

LOULibrary BT10516.0563564 793519v1