UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:08-226-KKC

GRIZZLY PROCESSING, LLC,                                                              PLAINTIFF

v.                                       **OPINION AND ORDER**

WAUSAU UNDERWRITERS
INSURANCE COMPANY,                                                                   DEFENDANT

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*

This matter is before the Court on the Motion for Choice of Law Ruling (DE 11) filed by the Plaintiff Grizzly Processing, LLC and the Motion for Summary Judgment (DE 14) filed by the Defendant Wausau Underwriters Insurance Company.

**I.     BACKGROUND.**

**A.     The Underlying State Tort Action against Grizzly.**

The Plaintiff Grizzly Processing LLC operates a coal-processing plant in Floyd County, Kentucky. In its Complaint against Wausau, it asserts that it has been sued by more than 90 plaintiffs in a separate Floyd Circuit Court action who allege injury to their person and property arising from Grizzly's operation of the coal-processing plant.

The 90 or more plaintiffs in the state court action complain about Grizzly's operations "for the past two or three years (2005-2007)." (DE 25, Ex. A, State Tort Complaint ¶ 57). They allege that Grizzly's activities "have caused their residence(s) to be contaminated with coal dust and other pollutants." (DE 25, Ex. A, State Tort Complaint ¶ 58). They allege damage from the "continuous coal dust and noise emitted from the Defendants' coal mining and processing operations, including the running of their coal trucks."(DE 25, Ex. A, State Tort Complaint ¶ 59). They also allege

damages from Grizzly's "blasting operations." (DE 25, Ex. A, State Tort Complaint ¶ 60).

The plaintiffs also assert that Grizzly has violated certain unidentified environmental regulations. The plaintiffs assert a claim under KRS 350.250, the Kentucky statute granting a private right of action for violations of the Kentucky Surface Mining Act; and under KRS 446.070, the Kentucky statute which grants a private right of action for violation of any statute. (DE 25, Ex. A, State Tort Complaint ¶¶ 67, 68).

The plaintiffs allege that many of them "have health problems, including breathing problems, all of which have been exacerbated by [Grizzly's] activities, and they have experienced pain and suffering, and medical expenses." (DE 25, Ex. A, State Tort Complaint ¶ 63). The plaintiffs seek compensatory damages including diminution in the value of their residences, costs of repair, medical expenses, and damages for pain and suffering. (DE 25, Ex. A, State Tort Complaint, Prayer for Relief).

**B.    This Action.**

Grizzly asserts that the Defendant Wausau is its insurer and that Wausau is obligated to investigate and defend it in the state court tort action and to pay any judgment obtained against Grizzly. (DE 1, Notice of Removal, State Court Complaint ¶ 13). Grizzly asserts that Wausau has denied that it has any such obligation under the applicable insurance policies because the policies contain pollution exclusion clauses.

Grizzly asks for a declaratory judgment that Wausau is obligated to investigate and defend the state court tort action on Grizzly's behalf. Grizzly also asserts a claim for breach of contract against Wausau. Wausau asserts a counterclaim in which it seeks a declaration that Grizzly's claims under the Wausau policies are barred because the policies exclude coverage for claims arising out

of the discharge, release, or dispersal of "pollutants."

### C. The Insurance Policies.

There are four insurance policies relevant to this action. The first is a Commercial General Liability ("CGL") Policy that was effective from December 14, 2006 to December 14, 2007 (the "2006-07 CGL Policy").

The second is a CGL Policy that was effective from December 14, 2007 to December 14, 2008 (the "2007-08 CGL Policy").

The third is an umbrella excess liability policy ("UEL") policy that was effective December 14, 2006 to December 14, 2007 (the "2006-07 UEL Policy"). The fourth is a UEL policy that was effective from December 14, 2007 to December 14, 2008 ( the "2007-08 UEL Policy").

#### 1) Wausau's Obligation to Defend and Indemnify.

The CGL Policies provide that Wausau "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." They also provide that Wausau "will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply." (DE 14, Ex. C, Pt.1, CGL Policy § I(1)(a), EM/ECF p. 17; DE 14, Ex. D, Pt. 1, CGL Policy § I(1)(a), EM/ECF p. 15).

#### 2) The Pollution Exclusions.

All four of the policies at issue contain pollution exclusions. The 2006-07 CGL Policy pollution exclusion provides, in relevant part:

3

This insurance does not apply to:

f.     (1)     The "contamination" of any "environment" by "pollutants" that are introduced at anytime, anywhere, in any way.
          (2)     Any "bodily injury," "personal and advertising injury" or "property damage" arising out of such "contamination.

(DE 14, Ex. D, Pt.3, CGL Policy, Total Pollution Exclusion Endorsement, EM/ECF p.3);

The 2006-07 GCL Policy defines "Pollutants" as "any irritant, including noise or sound, or any solid, liquid, gaseous or thermal 'contaminant,' including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste." (DE 14, Ex. D, Pt.3, CGL Policy, Total Pollution Exclusion Endorsement, EM/ECF p.4).

It further defines "contamination" as "any unclean or unsafe damaging or injurious or unhealthful condition arising out of the presence of 'pollutants,' whether permanent or transient in any 'environment.'" (DE 14, Ex. D, Pt.3, CGL Policy, Total Pollution Exclusion Endorsement, EM/ECF p.4).

The 2007-08 CGL Policy pollution exclusion provides, in relevant part:

This insurance does not apply to:

f.     Pollution
(1)     "Bodily injury" or "property damage" arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants". . .

(DE 14, Ex. C, Pt.1, CGL Policy § I(2)(f), EM/ECF p.19).

The 2007-08 GCL Policy defines "Pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes material to be recycled, reconditioned or reclaimed." (DE 14, Ex. C, Pt.2, CGL Policy § V(15), EM/ECF p.7).

4

The pollution exclusions in the two UEL Policies are identical and provide, in relevant part, as follows:

This insurance does not apply to:

1.  Pollution
a.  "Bodily injury," "property damage" or "personal and advertising injury" which would not have occurred in whole or part but for the actual, alleged, potential or threatened discharge, dispersal, seepage, migration, release, escape or presence of "pollutants" at any time and whether occurring indoors or outdoors. . . .

(DE 14, Ex. E, Pt. 1, 2007-08 UEL Policy, § VI - Exclusions, § A(1)(a), EM/ECF p. 19; DE 14, Ex. F., Pt. 1, 2006-07 UEL Policy, § VI - Exclusions, § A(1)(a), EM/ECF p. 18).

The UEL Policies define "pollutants" as "any solid, liquid, gaseous, sound or thermal irritant or contaminant, including but not limited to smoke, vapor, soot, fumes, acids, odors, alkalis, chemicals and waste." (DE 14, Ex. E, Pt. 2, 2007-08 UEL Policy, § VII - Definitions, § T, EM/ECF p.10; DE 14, Ex. F, Pt. 2, 2006-07 UEL Policy, § VII - Definitions, § T, EM/ECF p.5).

**D.     Current Motions.**

With its motion for choice of law ruling, Grizzly moves the Court to rule that West Virginia law governs this issue. Grizzly argues that West Virginia law differs from Kentucky law in that West Virginia courts interpret pollution exclusions as denying coverage only when the alleged pollution is expected or intended from the standpoint of the insured.

Wausau moves for summary judgment in its favor. In its motion, Wausau focuses only on its obligation to defend and indemnify Grizzly with regard to the state court plaintiffs' claims that they have been damaged by "coal dust." Wausau does not address its obligations with regard to the state-court plaintiffs' claims that they have been damaged by "noise" or "blasting operations" or their

claims under KRS 446.070 or KRS 350.250. Certain of these claims may not have been asserted in the state action at the time that Wausau filed its Motion for Summary Judgment.

 II. **WAUSAU'S MOTION FOR SUMMARY JUDGMENT.**

Under Fed. R. Civ. P. 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In its Motion for Summary Judgment, Wausau argues that it is "entitled to summary judgment dismissing Grizzly's complaint for coverage in its entirety." (DE 14 at 2). It further requests "that this court grant summary judgment against Grizzly on all claims asserted against Wausau in this action." In its proposed order tendered with its motion, the only relief Wausau proposes is that Grizzly's claims be dismissed with prejudice.

Thus, Wausau does not ask this Court to enter judgment on Wausau's behalf on the claims made in its Counterclaim. Nor does it ask the Court to make any declaration on its behalf. Instead, it asks only that Grizzly's complaint against it be dismissed. Further, as stated Wausau has focused only on Grizzly's claim that Wausau must defend and indemnify Grizzly with regard to the claims by the state-court plaintiffs that they have been damaged by "coal dust."

 A. **West Virginia Law Regarding Construction of Insurance Contracts.**

"As a general rule, an insurer's duty to defend is tested by whether the allegations in the plaintiff's complaint are reasonably susceptible of an interpretation that the claim may be covered by the terms of the insurance policy." *Aetna Cas. & Sur. Co. v. Pitrolo*, 342 S.E.2d 156, 160 (W.Va. 1986). The duty to defend is broader than the duty to indemnify. *Camden-Clark Memorial Hosp.*

*Ass'n v. St. Paul Fire and Marine Ins. Co.*, 682 S.E.2d 566, 575 (W.Va. 2009). Thus, if the insurer has no duty to defend under the policy, it has no duty to indemnify.

> In interpreting an insurance contract, the following rules apply:
>
> [T]he "[l]anguage in an insurance policy should be given its plain, ordinary meaning." *Soliva v. Shand, Morahan & Co., Inc.*, 345 S.E.2d 33 (1986), *overruled on other grounds by National Mut. Ins. Co. v. McMahon & Sons, Inc.*, 356 S.E.2d 488 (1987). Further, "[w]here the provisions of an insurance policy contract are clear and unambiguous they are not subject to judicial construction or interpretation, but full effect will be given to the plain meaning intended." *Keffer v. Prudential Ins. Co.*, 172 S.E.2d 714 (1970). However, "[w]henever the language of an insurance policy provision is reasonably susceptible of two different meanings or is of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning, it is ambiguous." *Prete v. Merchants Prop. Ins. Co.*, 223 S.E.2d 441 (1976). Finally, "[i]t is well settled law in West Virginia that ambiguous terms in insurance contracts are to be strictly construed against the insurance company and in favor of the insured." *National Mut. Ins. Co. v. McMahon & Sons*, 356 S.E.2d 488 (1987), *overruled on other grounds by Potesta v. U.S. Fid. & Guar. Co.*, 504 S.E.2d 135 (1998).

*Noland v. Virginia Ins. Reciprocal*, 686 S.E.2d 23, 30 (W.Va. 2009). "Likewise, where the policy language involved is exclusionary, it will be strictly construed against the insurer in order that the purpose of providing indemnity not be defeated." *Moore v. CNA Ins. Co.*, 599 S.E.2d 709, 714 (W.Va. 2004)(citation and internal quotations and brackets omitted).

Further:

> [T]he term "ambiguity" is defined as language "reasonably susceptible of two different meanings" or language "of such doubtful meaning that reasonable minds might be uncertain or disagree as to its meaning [.]" *Shamblin v. Nationwide Mut. Ins. Co.*, 332 S.E.2d 639 (1985). Only if the court makes the determination that the contract cannot be given a certain and definite legal meaning, and is therefore ambiguous, can a question of fact be submitted to the jury as to the meaning of the contract. It is only when the document has been found to be ambiguous that the determination of intent through extrinsic evidence become[s] a question of fact. Where a provision of an insurance policy is ambiguous, it is construed against the drafter, especially when dealing with exceptions and words of limitation. See *West Virginia Ins. Co. v. Lambert*, 193 W.Va. 681, 458 S.E.2d 774 (1995). "[A] court[,

7

however,] should read policy provisions to avoid ambiguities and not torture the language to create them." *Id*.

*Blake v. State Farm Mut. Auto. Ins. Co.*, 685 S.E.2d 895, 901 (W.Va. 2009).

### B. Coal Dust is a "Pollutant."

As to whether coal dust is included in the definition of pollutant, each of the insurance policies defines a "pollutant" as an "irritant" or "contaminant." There can be no doubt that "coal dust" is an irritant or a contaminant.

Federal regulations identify coal dust as a "contaminant." 29 C.F.R. § 1910.1000. Congress has recognized that coal dust inhalation causes permanent damage. *Plesh v. Director, OWCP*, 71 F.3d 103, 108 (3rd Cir. 1995). The Sixth Circuit has determined that coal dust is clearly a pollutant for purposes of an insurance exclusion. *U.S. Fidelity and Guar. Co. v. Star Fire Coals, Inc.*, 856 F.2d 31, 33 (6th Cir. 1988). Other courts have recognized that other kinds of dust are "pollutants" within the meaning of pollution exclusions. *See General Star Indem. Co. v. Virgin Islands Port Authority*, 2007 WL 185122 at * 6 (D. Virgin Islands 2007)("An ordinary reading of the terms of exclusion supports the unambiguous proposition that it applies to damages caused by the release of "any" substance that could cause irritation or contamination, including dust or other unidentified "pollutants."); *Mt. Hawley Inc. Co. v. Wright Materials,* Inc., 2005 WL 2805565 at * 4 (N.D. Tex. 2005)("cement dust and any toxins contained therein are irritants or contaminants under the terms of the pollution exclusion"); *Cold Creek Compost, Inc. v. State Farm Fire & Casualty Co.*, 68 Cal. Rptr. 3rd 216, 229 (Cal. Dist. Ct. App. 2007) (citing cases holding that silica dust and cement dust are "pollutants" and stating that "dust is recognized and regulated as a form of air pollution under California environmental law").

Thus, the Court finds the term "pollutants," as defined in the pollution exclusions at issue, includes "coal dust." The plaintiffs' claims in the state court tort action that they were damaged by "coal dust" are not reasonably susceptible of an interpretation that they are covered by the terms of the insurance policies at issue in this action.

### C.  Grizzly's Arguments against Summary Judgment.

#### 1)  Further Factual Development is Not Necessary.

In response to Wausau's Motion for Summary Judgment, Grizzly argues that this Court cannot decide solely on the basis of the allegations in the underlying state court tort action whether the pollution exclusions apply. In support of this argument, Grizzly cites this Court's decision in *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 2009 WL 585806 (E.D. Ky. 2009). That matter was not before the Court on a Motion for Summary Judgment but instead on a Motion to Dismiss in which the defendant coal company argued that this Court should decline to exercise jurisdiction over the insurance company's action seeking a declaration that it had no duty to defend the defendant in a state court tort action.

The Court declined to exercise jurisdiction over the declaratory action noting the Sixth Circuit's recognition that such an action "should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem." *Bituminous Cas. Corp. v. J & L Lumber Co.*, Inc., 373 F.3d 807, 812 (6th Cir. 2004). However, in that case, the declaratory action was not "closely intertwined" with a claim over which this Court *must* exercise jurisdiction as the declaratory action is in this case.

In support of its decision to decline jurisdiction in *Lloyd's*, the Court further noted that the facts regarding how the plaintiffs in the underlying action were damaged would be developed in the

state action. The plaintiffs in the underlying action alleged damage from "dust, dirt, debris, and other particulate matter." *Id*. at * 1.

Here, however, the plaintiffs' allegations in the underlying state court complaint regarding damages from "coal dust" clearly fit within the pollution exclusions at issue. The Court can decide as a matter of law that "coal dust" is a pollutant and, thus, the coal-dust claims in the underlying state tort action are not covered under the insurance policies.

        **2)**        **It is Irrelevant Whether the Alleged Pollution is "Expected or Intended."**

In response to the summary judgment motion, Grizzly also argues that, under West Virginia case law, pollution exclusion clauses only include pollution that is "expected or intended" by the insured. For this argument, Grizzly cites *Joy Technologies, Inc. v. Liberty Mut. Ins. Co.*, 421 S.E.2d 493, 498-500 (W.Va. 1992). However, the policy provisions at issue in that case were significantly different from those at issue in this case. In that case, the insurance company agreed to pay all damages caused by an "occurrence" which was defined as an "accident. . . which results in bodily injury or property damage neither *expected nor intended* from the standpoint of the insured. *Id*. at 498 (emphasis added). The court concluded that the policies covered pollution damage "so long as it was not expected or intended." *Id*. at 500.

The insurance policies at issue in this case do not contain the"expected" and "intended" language. Thus, the *Joy Technologies* holding is irrelevant.

        **D.**        **Relevant Distinctions Between Kentucky and West Virginia Law.**

Grizzly has not pointed to any relevant distinctions between Kentucky and West Virginia law. Nor has the Court located any. Accordingly, under both Kentucky and West Virginia law, the Court will dismiss Grizzly's claim that Wausau is obligated to defend and indemnify Grizzly with

regard the claims by the plaintiffs in the state court action that they have been damaged by "coal dust."

### III. CONCLUSION.

For all these reasons, the Court hereby ORDERS:

1) Grizzly's Motion for Choice of Law Ruling (DE 11) is DENIED as moot;

2) Wausau's Motion for Summary Judgment (DE 14) is GRANTED in part and DENIED in part;

3) Wausau's Motion for Summary Judgment (DE 14) is GRANTED as to Grizzly's claim that Wausau must defend and indemnify Grizzly with regard to the claims by the plaintiffs in the state court action that they have been damaged by "coal dust." Grizzly's claim that Wausau must defend and indemnify it with regard to the state plaintiffs' "coal dust" claims is DISMISSED. The Motion for Summary Judgment is otherwise DENIED.

Dated this 11th day of March, 2010.

Signed By:
*Karen K. Caldwell* KKC
United States District Judge